UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUMMIT CONTRACTORS, INC.,

    Plaintiff,

v.                                         CASE NO. 8:13-CV-295-T-17TGW

CRUM & FORSTER SPECIALTY
INSURANCE COMPANY, et al.,

    Defendants.
_____/

## ORDER

This cause is before the Court on:

| | |
|---|---|
| Dkt. 111 | Plaintiff's Motion for Summary Declaratory Judgment |
| Dkt. 125 | Defendant' Response in Opposition |
| Dkt. 112 | Defendant's Motion for Summary Judgment |
| Dkt. 124 | Plaintiff's Response in Opposition |
| Dkt. 142 | Plaintiff's Memorandum in Opposition |
| Dkt. 144 | Defendant's Response |

Plaintiff Summit Contractors, Inc. ("Summit") filed this action against Defendants Amerisure Mutual Insurance Company ("Amerisure") and Crum & Forster Specialty Insurance Company ("Crum"), seeking a declaration of its rights under commercial general liability insurance policies issued by Amerisure and Crum (Count I) and alleging a claim for breach of contract against Amerisure (Count II). The procedural history of this litigation is set forth in detail in this Court's March 10, 2014 Order on Amerisure's motion to dismiss and for partial summary judgment. (Dkt. 84). After that Order issued, the parties settled the claims against Amerisure. (Dkt. 139). As to the remaining declaratory judgment claim against Crum, the parties have filed the instant cross-Motions for Summary Judgment.

The Court entered an Order directing supplemental briefing as to the applicability of the made-whole doctrine based on the facts at issue in each of the underlying lawsuits. (Dkt. 141).

Case No. 8:13-CV-295-T-17TGW

I.  **Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks omitted).

The moving party bears the initial responsibility to demonstrate the absence of a genuine dispute of material fact, and the Court must view all evidence and reasonable inferences in the light most favorable to the nonmoving party. Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 702 F.3d 1312, 1316 (11th Cir. 2012). "Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial." Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010). The nonmoving party may not rely on evidence that is "merely colorable, or is not significantly probative of a disputed fact." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1315 (11th Cir. 2011) (internal quotation marks omitted).

II.  **Factual Background**

1.  Summit served as the general contractor on three apartment projects in the Orlando area. (Dkt. 110, par. 1). The owners of all three projects ultimately filed lawsuits against Summit, alleging that the projects suffered from construction defects. Those actions were: (a) Bordeaux Condominium Association v. Summit Contractors, Inc. ("Bordeaux"); (b) Oxford Place at Tampa Palms Condominium Association, Inc. v.

2

Case No. 8:13-CV-295-T-17TGW

<u>Summit Contractors, Inc.</u> ("Oxford Place"); and (c) <u>Central Park LV Condominium Association, Inc. v. Summit Contractors, Inc.</u> ("Central Park"). (Dkt. 110, par. 2).

    2. Crum issued five successive primary commercial general liability insurance policies to Summit. Each policy had either a $50,000 or $100,000 per-claim Self-Insured Retention ("SIR"), below which Crum had no defense or indemnity obligation. Apart from the SIR amount, the policies were identical in all material respects. (Dkt. 110, par. 3).

    3. In each underlying lawsuit, once Summit exhausted one $50,000 SIR by payment of defense costs, Crum defended Summit. Summit asserted indemnity and other claims against various responsible subcontractors and their insurers. (Dkt. 110, par. 4).

    4. Crum settled the Oxford Place lawsuit on behalf of Summit in a confidential settlement, which Crum paid. Summit did not contribute to the settlement. Crum later recovered some funds from subcontractors or their carriers, the total amount of which exceeded the $50,000 SIR that Summit had paid. (Dkt. 110, par. 5).

    5. In the Bordeaux lawsuit, Crum also settled the claims against Summit in a confidential settlement. Crum paid its own funds to the plaintiff-association, combined with funds paid by a subcontractor's carrier that exceeded Summit's $50,000 SIR. Summit did not contribute any of its own funds to the settlement. (Dkt. 110, par. 6).

    6. In the Central Park lawsuit, Crum and Amerisure each paid $1 million to settle the plaintiff-association's claims against Summit, in addition to $100,000, which had been collected from one or more subcontractors or their carriers. Summit, which

Case No. 8:13-CV-295-T-17TGW

did not contribute any of its own funds to the settlement, assigned to the plaintiff contractual rights against certain other subcontractors on the project. (Dkt. 110, par. 7).

## III. Discussion
## A. Self-Insured Retention

In this action, Summit seeks a declaratory judgment that, having paid self-insured retention amounts in each underlying lawsuit, it is entitled to have the SIR amounts reimbursed, from "excess" funds recovered by Crum from subcontractors in the underlying lawsuits. (Dkt. 111, p. 17).

A self-insured retention is similar to a deductible, with two primary differences. First, a deductible is deducted from the overall policy limits, while policy limits stack on top of a SIR. Second, an insurer is typically not required to provide coverage until the SIR is paid, which is not the case with a deductible. State Nat'l Ins. Co. v. Lamberti, 362 Fed. Appx. 76, 78 (11th Cir. 2010); Public Risk Mgm't of Fla. v. One Beacon Ins. Co., 569 Fed. Appx. 865, 869 n.5 (11th Cir. 2014).

> In this case, the SIR endorsement provides in relevant part:
> 1. Our total limit of liability as stated in the policy declarations shall apply in excess of the retained limit (herein called the Self-Insured Retention) as stated in the endorsement, and the Named Insured agrees to assume this retained limit:
>
>> **Amount and Basis of SIR**
>> Self Insured Retention (SIR): [$50,000 per claim]
>> . . .
>
> 3. Our obligation to pay damages and defend claims or "suits" under this policy applies only when the amount of the Self-Insured Retention has been exhausted by the insured's payment of damages and or "claims Expense" that would be covered by this policy but for the application of the Self-Insured Retention. . . . **Compliance with this clause is a**

4

Case No. 8:13-CV-295-T-17TGW

**condition precedent for coverage under this policy. In the event of the failure of the Insured to comply with this clause, no loss, cost or expense shall be payable by the Company.**

. . .

9. The insured shall indemnify and hold us harmless from and against any and all damages, costs and expenses, including but not limited to adjusting expenses and attorneys' fees incurred by us in the investigation, defense, settlement and/or satisfaction of judgment of any claim or "suit" within the Self-Insured Retention.

. . .

The following SECTION IV Conditions are replaced as indicated:

. . .

**4. Other insurance**
This insurance is in excess of all other insurance, except insurance specifically purchased to apply in excess of this insurance, and shall not contribute with any other insurance. This insurance is excess of the Self Insured Retention in all circumstances. The Self Insured Retention can only be reduced or exhausted by your payment of settlements or judgments for damages which would otherwise be covered under the terms of this insurance. It cannot be reduced or exhausted by other insurance that may be available to you unless the other insurance was purchased by you for the specific purpose of reducing or replacing the Self Insured Retention.

**8. Transfer Of Rights Of Recovery Against Others To Us.**
If the insured has rights to recover all or part of any payment we have made under the Commercial General Liability Coverage Part, including payments made under this endorsement, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

(Dkt. 110-1).

## B. Intervest

In the instant cross-motions, Crum and Summit each place primary reliance on a recent Florida Supreme Court decision, Intervest Construction of Jax, Inc. v. General

5

Case No. 8:13-CV-295-T-17TGW

Fidelity Insurance Co., 133 So. 3d 494 (Fla. 2014). In that case, the Florida Supreme Court answered two certified questions from the Eleventh Circuit. The first certified question asked whether an insured could satisfy a self-insured retention using indemnification funds received from a third party. Under the policy language at issue, the court held that the insured could use indemnification funds from a third party to satisfy the SIR. Id. at 503. The second certified question asked whether a subrogation clause in the SIR endorsement nevertheless entitled the insurer to priority over the indemnification funds—thus preventing the insured from using the funds to satisfy the self-insured retention. The court held that the subrogation clause did not give the insurer priority to the funds because the common-law "made-whole doctrine" gave the insured first priority to the funds—absent express contractual terms to the contrary. Id. at 506. In the instant cross-motions, Crum relies on the Florida Supreme Court's answer to the first certified question, while Summit relies on the answer to the second certified question.

Specifically, Crum argues that Intervest makes clear that the policy language controls the question of who pays the SIR. Although the Florida Supreme Court ultimately determined that the insured in that case could use indemnification payments to satisfy the SIR amount, Crum convincingly argues that Summit's insurance policy contains significant and distinguishing language. Crum thus maintains that Summit is not entitled to recoup its SIR payment, as the policy language clearly requires Summit to pay the SIR amount from its own funds.

By contrast, Summit maintains that the Florida Supreme Court's answer to the first question is not relevant because it is undisputed that Summit did, in fact, pay the SIR amount from its own funds. Summit instead argues that it is entitled to a refund of the SIR amount under the made-whole doctrine. In particular, Summit argues that the subrogation provision in its SIR endorsement is very similar to the subrogation provision

Case No. 8:13-CV-295-T-17TGW

at issue in Intervest. Because the Florida Supreme Court held that such a provision did not abrogate the made-whole doctrine, Summit maintains that it should be reimbursed for the SIR amount under that doctrine.

Although both parties premise their arguments on Intervest, the decision is not solidly on point. Fundamentally, Intervest was a dispute over insurance coverage—specifically, whether the insured satisfied the SIR, triggering the insurer's duty to provide coverage. See Intervest Const. of Jax, Inc. v. Gen. Fid., 746 F.3d 1261, 1262 (11th Cir. 2014) (describing the "coverage dispute" as whether the insurer breached its obligations under a commercial general liability policy). The more precise issue was whether the insured-general contractor could use indemnification funds acquired from a subcontractor—rather than its own funds—to satisfy the SIR. Intervest Const. of Jax, Inc. v. Gen. Fid., 662 F.3d 1328, 1331 (11th Cir. 2011).

In this case, by contrast, there is no dispute that Summit satisfied the SIR as required under the policy, from its own funds. It is also undisputed that, after Summit exhausted the SIR, Crum provided a defense and coverage. Although Summit is now attempting to obtain a refund of its SIR payment, Summit does not cite any policy language entitling it to a refund. Because the parties satisfied their respective policy obligations, and because Summit does not rely on policy language as the basis for the instant claim, this action is not a true coverage or contract dispute.

C. Subrogation and the made-whole doctrine

Summit instead invokes the "made-whole doctrine," which is an equitable concept arising within Florida subrogation law. In the context of insurance, "[s]ubrogation is the right of the insurer to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss paid by

7

Case No. 8:13-CV-295-T-17TGW

the insurer." Monte de Oca v. State Farm Fire & Cas. Co., 897 So. 2d 471, 472 n.2 (Fla. 3d DCA 2004) (internal quotation marks omitted). "The purposes of subrogation are (1) to prevent over compensation to an insured, and (2) to assure that a wrongdoer who is legally responsible for the harm will not receive the windfall of being absolved from liability merely because the insured has obtained and paid for insurance for his or her own benefit." Id. at 473.

The principle of subrogation comes with a caveat: the insured is entitled to be "made whole" before a subrogated insurer may participate in any recovery from a third-party tortfeasor. Id. The "made-whole doctrine" provides that "where both the insurer and the insured simultaneously attempt to recover all of their damages from a tortfeasor who cannot (because of insolvency, limited insurance coverage, or other reasons) pay the full value of damages, the insured has priority of recovery over the insurer." Schonau v. Geico Gen. Ins. Co., 903 So. 2d 285, 287 (Fla. 4th DCA 2005). The rationale lies in the fact that, "where full recovery has been made by the insured, who is thus 'made whole,' any payments to the insured over and above his actual damages may be viewed as a 'double recovery,' thus equitably entitling the insurer to subrogation against the insured's recovery." Humana Health Plans v. Lawton, 675 So. 2d 1382, 1384 (Fla. 5th DCA 1996). In short, "an insured who has settled with a third-party tortfeasor is liable to the insurer-subrogee only for the excess received over the total amount of his loss." Cagle v. Bruner, 112 F.3d 1510, 1520 (11th Cir.1997).

The Eleventh Circuit has observed that the made-whole doctrine is "a default rule that is read into insurance contracts, except where it is explicitly excluded." Cagle, 112 F.3d at 1520-21. In Intervest, the Florida Supreme Court confirmed that interpretation, holding that even when a subrogation provision is present, the made-whole doctrine applies "unless the contract contains express terms to the contrary." Intervest, 133 So.

Case No. 8:13-CV-295-T-17TGW

3d at 505-06. The Florida Supreme Court concluded that the subrogation clause at issue in Intervest did not abrogate the made-whole doctrine. Id. at 506.

**D. Analysis**

Summit maintains that the "sole issue" for this Court is whether the subrogation provision in the SIR endorsement abrogates the made-whole doctrine. (Dkt. 124, p. 14-15). If this were the sole issue, Summit would arguably prevail—the subrogation provision at issue here is very similar to the subrogation provision analyzed by the Florida Supreme Court in Intervest.

The Court notes that at least one Florida appellate court has declined to allow an insured to pursue an affirmative claim for relief under the made-whole doctrine. Specifically, in Schonau v. Geico General Insurance Company, the Fifth District Court of Appeal observed that "Florida law does not appear to recognize an affirmative right or cause of action by an insured against its insurer to be 'made whole' beyond the payment of insurance policy proceeds." Schonau, 903 So. 2d at 287. Rather, courts typically allow the made-whole doctrine as a defense, used by insureds, when an insurer makes a subrogation claim on the insured's recovery. Id.[1] The Fifth District Court of Appeal also emphasized that cases applying the made-whole doctrine involve circumstances in which there is a limited pool of money and competing claims by the insured and insurer. In that situation—where the third-party tortfeasor is unable to compensate both the insured and the insurer—equitable principles give priority to the insured. Id. at 287-88.

---

[1] The Third District Court of Appeal reached a similar result in Monte de Oca v. State Farm Fire & Casualty Co., holding that the made-whole doctrine did not support a cause of action by an insured to recover the unreimbursed portion of a deductible. 897 So. 2d at 472-73.

9

Case No. 8:13-CV-295-T-17TGW

In this case, Summit is invoking the made-whole doctrine as an affirmative claim. This serves to distinguish the instant dispute from Intervest, in which the insurer was claiming priority to settlement funds paid to the insured, consistent with the typical made-whole scenario. See Intervest, 662 F.3d at 1329 (noting that the settlement agreement provided that the subcontractor would pay $1 million to the insured). The case on which the Florida Supreme Court relied also involved a claim by an insurer against third-party funds recovered by an insured. Bordeaux, Inc. v. Am. Safety Ins., 186 P.3d 1188, 1190-91 (Wash. Ct. App. 2008) (noting that the insured-developers independently recovered funds from third-party subcontractors, which were then held in trust pending a determination as to whether the insurer had a right to recovery).

Moreover, as to the "limited fund" scenario, Crum & Forster correctly argues that in this case Summit has not sustained a loss to which the made-whole doctrine would apply, as this is not a true "limited fund" scenario. As detailed above, Summit and Crum were involved in three underlying lawsuits and settlements. In the Oxford Place lawsuit, Crum funded the settlement and then recovered additional funds from third-party subcontractors. (Dkt. 110, pars. 4, 5). In the Bordeaux and Central Park lawsuits, the subcontractors or their carriers paid settlement funds directly to Crum or to the plaintiff-associations. (Dkt. 110, pars. 6, 7). Summit cited no evidence suggesting that it was unable to recover from the third-party subcontractors due to their insolvency, insufficient insurance coverage, or the like, as required to invoke the made-whole doctrine. Schonau, 903 So. 2d at 287.

As a final matter, the Court notes that the outcome here is entirely consistent with the parties' contracts. The Crum & Forster policy contains a controlling contractual provision under which Summit agreed to "indemnify and hold [Crum & Forster] harmless from and against any and all damages, costs and expenses, including but not limited to

10

Case No. 8:13-CV-295-T-17TGW

adjusting expenses and attorney's fees incurred by [Crum & Forster] in the investigation, defense, settlement and/or satisfaction of judgment of any claim or 'suit' within the Self-Insured Retention." (Dkt. 110-1 at 5). The Court could not grant the relief sought by Summit unless the Court ignored the clear contractual language of the policy. The Court cannot rewrite the terms of the policy.

In order to obtain a lower premium, Summit elected to purchase insurance coverage that applied only after Summit paid $50,000 in defense costs or settlements or judgments, which Summit expressly "agree[d] to assume" and agreed to pay at its "own expense." (Dkt. 110-1 at 1-2; Dkt. 112 at 3, 11). Summit further agreed to indemnify and hold Crum & Forster harmless against all damages, costs or expenses within the $50,000 Self-Insured Retention. Summit has therefore paid amounts it contractually assumed and agreed to pay, and did not sustain a loss for which it can seek recovery. The "Other Insurance" clause makes it clear that, aside from Summit paying the SIR, only other insurance purchased by Summit for the specific purpose of reducing or replacing the SIR can reduce or exhaust the SIR, and such insurance "is excess of the SIR in all circumstances." Exhaustion of the SIR was a condition precedent for coverage. It is undisputed that Summit satisfied the SIR from its own funds, as required by the policy language. It is undisputed that upon satisfaction of the SIR, Crum & Forster defended Summit and paid settlements on Summit's behalf.

After consideration, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

Accordingly, it is **ORDERED** that:
a. Defendant's Motion for Summary Judgment (Dkt. 112) is **granted**;
b. Plaintiff's Motion for Summary Judgment (Dkt. 111) is **denied**.

Case No. 8:13-CV-295-T-17TGW

The Clerk of Court shall enter a final judgment in favor of Defendant Crum & Forster Specialty Insurance Company and against Plaintiff Summit Contractors, Inc. and close this case.

**DONE AND ORDERED**, in Chambers, in Tampa, Florida on this 12th day of February, 2015.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record